I iLOWE, Judge Pro Tem.
The defendant, Eric Bernard Thomas, was charged by bill of information with distribution of cocaine, a violation of LSA-R.S. 40:967(A)(1). A jury found him guilty as charged, and the district court sentenced him to serve 150 months at hard labor. Thomas appeals his conviction, setting forth six assignments of eiTor. Finding no merit to the assignments, we affirm.

BACKGROUND FACTS

Eric Bernard Thomas, a previously convicted drug offender, operated an illegal drug business in Bienville Parish, Louisiana. On July 20, 1992, a narcotics investigator, Robert Thomas, acted as an undercover agent for the Bienville Parish Sheriffs Department. Early in the evening, Agent Thomas met with Deputy Jarrett Ketchum of the Bien-ville Parish Sheriffs Office, Narcotics Division. Deputy Ketchum instructed Agent Thomas to work with a confidential informant. He then gave Agent Thomas some money with which to make a drug purchase.
Later that evening, Agent Thomas met the confidential informant. The two went to Dunn’s Cafe, a local club located on Crawford Street in Arcadia, Louisiana. When they arrived, a crowd of people had already gathered in front of the cafe. Agent Thomas instructed the confidential informant to go over to the cafe and find out if anyone was selling drugs and, if possible, return with a drug dealer. The informant complied with Agent Thomas’s request and returned with the defendant. The defendant then sold two $20.00 rocks of crack to Agent Thomas.
Approximately one hour after consummating the drug deal, Agent Thomas met Deputy Ketchum at a little church. ) 2Agent Thomas delivered the cocaine which had been wrapped in notebook paper labeled with the defendant’s name, the date, and the amount of the purchase. Approximately two days later, Deputy Ketchum transferred the cocaine to the Northwest Crime Lab where it was analyzed and determined to be cocaine.
Approximately one month later, and sometime after the defendant declined Deputy *410 Ketchum’s offer to become a drug informant, the defendant was arrested for the present offense.

DISCUSSION

Assignments of Error Nos. 1 and 7

In these assignments of error, the defendant argues that, because of the definition of the term “distribute,” the statute under which he was charged and convicted, LSA-R.S. 40:967(A)(1), is impermissibly vague and broad. The defendant asserts that, for this reason, the district court erred in denying his motion to quash the bill of information and that the law under which he was convicted is so vague, so broad, and all inclusive that it is unconstitutional.
Pursuant to LSA-R.S. 40:961(13), “distribute” means
to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.
Defendant also contends that, under this definition, the only deliveries which constitute “distribution” are those made pursuant to the lawful order of a practitioner.
We note at the outset that the defendant confuses the statutory definition of distribution with the statutory offense of distribution. The definition in R.S. | .<¡40:961(13) does not state what acts are considered legal or illegal. It merely defines the terms “distribute” and “distributor”. The penal statute, which proscribes specific conduct and prescribes the penalty for the offense, is R.S. 40:967.
The defendant asserts that the term “distribute” (as used in LSA-R.S. 40:967(A)(1) and defined by LSA-R.S. 40:961(13)) causes every deputy, lab person, clerk of court, and frequently the district attorney and the jury to violate LSA-R.S. 40:967(A)(1) when they handle cocaine in the normal course of business. As such, the defendant claims, the prosecutor is practically vested with the discretion to pick and choose the time and people he wants to prosecute. Consequently, the defendant contends, it is the prosecutor, not the legislature, who determines which acts are criminal.
Constitutional scrutiny favors the statute. Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Griffin, 495 So.2d 1306, 1308 (La.1986). In State v. Griffin, supra at 1309, the Louisiana Supreme Court noted:
Individuals are protected from incursions by the state into certain areas of their lives by the Fourteenth Amendment of the United States Constitution, and a statute would be overbroad and, thus, constitutionally defective, if it extends state criminal authority beyond the proper reach of government into one of these protected areas.
However, in order for the principle of over-breadth to apply, a constitutionally protected right must be claimed in the prosecution. State v. Griffin, supra, at 1310. As the Louisiana Supreme Court stated in State v. Davis, 448 So.2d 645, 649 (La.1984),
The standard of review of a statute which is alleged to be overly broad in its scope is whether the choice of sanctions of lawfully regulated activity infringes upon the exercise of protected freedoms. [Citation omitted.]
Lin the instant case, the defendant has not alleged that any protected freedoms are involved. It can hardly be said that the act of distributing cocaine is deeply rooted in the history and tradition of either this nation or this state, or that such conduct is implicit in the concept of ordered liberty. The facts before us do not involve an extension of state criminal authority beyond the proper reach of government into a constitutionally protected area of the defendant’s life. Accordingly, we need not reach the question of whether either LSA-R.S. 40:967(A)(1) or 40:961(13) is unconstitutionally broad in its scope. For this reason, this argument is meritless.
Moreover, we find that defendant’s construction of the statutory definition of “distribute” is incorrect.
Where a statute is ambiguous and susceptible of two constructions, courts should give that construction which best “com *411 ports with the principles of reason, justice, and convenience,” rather than a construction which would make the statute meaningless.
State v. Monk, 351 So.2d 125, 127-128 (La.1977) (citations omitted).
The defendant contends that the phrase, “... pursuant to the lawful order of a practitioner, ...” modifies every example of delivery listed in La.R.S. 40:961(13) if standard rules of English grammar are applied.
Defendant then concludes that he did not break the law because he did not act pursuant to the lawful order of a practitioner. However, this construction of the statutory definition does not, as defendant contends, result when the standard rules of English grammar are applied.
The challenged definition states that distribution means to deliver a controlled dangerous substance whether by (1) physical delivery, administering, subterfuge, furnishing a prescription, or by (2) filling, packaging, labeling or compounding the substance pursuant to the Islawful order of a practitioner. The phrase, “pursuant to the lawful order of a practitioner,” modifies only the types of distribution which are listed after the disjunctive “or” in the sentence, to-wit: filling, packaging, labeling or compounding. Thus, distribution occurs by physical delivery, administering, subterfuge or furnishing a prescription. Distribution also occurs by filling, packaging, labeling or compounding, even if it is done pursuant to the lawful order of a practitioner. The legislature did not require that, in order to constitute “distribution”, the' transfer must be made pursuant to the lawful order of a practitioner. The occurrence of distribution does not constitute the offense of distribution.
Defendant also contends that, among all who transfer a controlled dangerous substance, the only “blameless” persons are those who package label or compound without the lawful order of a practitioner. The fact, that LSA-R.S. 40:961(13) defines distribution, in part, as the filling, packaging, labeling or compounding the cocaine pursuant to the lawful order of a practitioner, does not mean that the absence of a practitioner’s lawful order means that a distribution is legal. The definition of distribution and the offense of distribution are not one in the same: the R.S. 40:961(13) definition does not define what acts are legal or illegal. Moreover, as we have discussed above, there is no requirement of a practitioner’s order for an act to constitute distribution. Accordingly, we also find no merit to this contention.
Defendant’s construction of LSA-R.S. 40:961(13) does not comport with the principles of reason, justice, and convenience. His construction would render the | ^statute meaningless and would lead to absurd consequences. Accordingly, we find that the defendant’s construction of this statutory definition is incorrect.
In the alternative, defendant contends that, if “distribution” is not limited to all deliveries made pursuant to the lawful order of a practitioner, then every person who transfers a controlled dangerous substance is guilty of distribution, and the statute is im-permissibly vague because it does not establish who must be prosecuted. Defendant contends that, as a result, it is the district attorney, and not the legislature, who determines what acts are criminal under the distribution statute. According to the defendant, the statute defines “distribute” such that many people, including laboratory personnel, deputies, the jury, and the clerk of court, have distributed (i.e., transferred) controlled dangerous substances. The defendant states that if “distributors” can only be determined at the whim of the district attorney, then the law denies due process. Although we agree that many people do “distribute” controlled dangerous substances, as defined in R.S. 40:961(13), we disagree with the import that the defendant attaches to this definition in his conclusion that the offense of distribution is impermissibly defined.
A penal statute must describe the unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. State v. Union Tank Car Co., 439 So.2d 377, 385 (La.1983); State v. Davis, supra at 649.
*412 Defendant was charged with, and convicted of, distribution of cocaine, in violation of LSA-R.S. 40:967(A)(1). That statute provides that, “[ejxcept asjjauthorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950,” it is unlawful for any person to knowingly or intentionally distribute cocaine. LSA-R.S. 40:967(A)(1); LSA-R.S. 40:964 Schedule 11(A)(4).
Licensing requirements, fees, regulations, record keeping procedures, and so forth, for persons authorized to handle controlled dangerous substances are governed, inter alia, by LSA-R.S. 40:972 through 40:978. As noted above, “distribute,” as used in the above statute, means to “deliver” cocaine, whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the cocaine pursuant to the lawful order of a practitioner. “Deliver” is defined in LSA-R.S. 40:961(9) as being “the transfer of [cocaine].” Thus, according to above cited statutes, it is unlawful for any person to transfer cocaine, whether by (1) physical transfer, administering, subterfuge, furnishing a prescription, or by (2) filling, packaging, labeling, or compounding the substance pursuant to the lawful order of a practitioner: unless he is authorized to do so by the Uniform Controlled Dangerous Substances Law. LSA-R.S. 40:967(A)(1) and 40:961(13). See also, e.g., LSA-R.S. 40:972, et seq.
It appears that the language of LSA-R.S. 40:961(13) and 40:967(A) makes it sufficiently clear that selling $20.00 rocks of crack cocaine on the street to the general public is unlawful. Such conduct is not authorized by the Uniform Controlled Dangerous Substances Law.
Moreover, the prosecutor cannot determine on a whim which acts constitute violations of R.S. 40:967(A), any more than he could with any other statute. The offense of distribution of cocaine requires the act of an ^unauthorized transfer of cocaine. Thus, before the prosecutor can determine whether to prosecute a person for violating LSA-R.S. 40:967(A)(1), the person must first be suspected of transferring cocaine without authorization to do so. If the person is not suspected of transferring cocaine without authorization, then the prosecutor cannot whimsically determine to prosecute that person for distribution of cocaine simply because the act falls within the definition of “distribute”. Accordingly, without reaching the issue of constitutionality of the statutes, we find no merit to the defendant’s claim that he was denied due process because the R.S. 40:961(13) definition of “distribute” is so vague that the prosecutor had too much discretion to determine whom to prosecute.
These assignments of error lack merit.

Assignments of Error Nos. 2 & 3

In these assignments of error, the defendant contends that the evidence is insufficient to support his conviction for distribution of cocaine, or for any responsive verdict thereto. He argues that the state failed to adequately establish that he was the person who sold crack cocaine to Agent Thomas. In particular, he challenges the sufficiency of the evidence with regard to Agent Thomas’s identification of him as the culprit.
Where the key issue is the defendant’s identity as the perpetrator of an offense, rather than whether the offense was committed, the state is required to negate any reasonable probability of misidentification. State v. Williams, 618 So.2d 606 (La.App. 2d Cir.1993), writ denied, 625 So.2d 1060 (La.1993).
Where there is conflicting testimony as to factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of weight of the evidence and not its sufficiency. A determination of the weight of lathe evidence is a question of fact over which this court has no appellate jurisdiction in criminal cases.
A reviewing court affords great deference to a jury’s decision to accept or reject the testimony of a witness, in whole or in part.
It is the function of the trier of fact to assess credibility and resolve conflicting testimony. Where the trier of fact has *413 made a rational determination, it should not be disturbed by an appellate court.
Id. 618 So.2d at 608-09 (citations omitted).
At trial, the defendant offered the testimony of Regina Denise Jackson, his out-of-town Mend who lives in Grambling, Louisiana. Ms. Jackson stated that the defendant visited her on the night of the offense; however, she could not state the exact time in which they were in each other’s presence. The defendant testified that his visit with Ms. Jackson began at approximately 8:30 p.m. The defendant further stated he did not know Agent Thomas and did not sell crack cocaine to him.
On the other hand, Agent Thomas testified that the defendant was, without a doubt, the person who sold crack cocaine to him on July 20, 1992. Agent Thomas stated that he and the defendant met outside of Dunn’s Cafe at 10:30 p.m. while Agent Thomas sat in his undercover car, and that the following events occurred: When the defendant first approached the car, the two of them had a brief conversation, and afterwards, the defendant entered the car and sat in the front passenger seat next to Agent Thomas. While inside the undercover vehicle with the inside dome light illuminated, the defendant sold two $20.00 rocks of crack cocaine to Agent Thomas.
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. In the present case, there is sufficient evidence, when viewed in the light most favorable to the prosecution, for a rational hntrier of fact to find that the state proved the essential elements of the crime beyond a reasonable doubt. Although the defendant and his witness stated that the defendant was in Grambling, Louisiana on the night of the offense, neither gave a definite time frame in which the defendant remained at that location. By contrast, Agent Thomas identified the defendant as the perpetrator of the offense. The existence of the conflicting testimony goes to the weight, rather than the sufficiency of the evidence. See State v. Williams, supra. The instant trier of fact resolved this conflict by finding the defendant guilty of the charged offense. This finding is reasonable in light of the testimony and other evidence at trial. Ae-cordingly, we find that the record contains sufficient evidence upon which to base the defendant’s conviction for distribution of cocaine.
These assignments of error lack merit.
Assignments of Error Nos. J & 5
We note that there is no assignment of error number 6. The defendant did not brief or argue his assignments of error numbers 4, and 5 which, respectively, assert that the trial court erred in its ruling on the motion for new trial and the motion for post verdict judgment of acquittal. Assignments of error which are neither briefed nor argued are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). Accordingly, we deem these assignments abandoned.

CONCLUSION

For the reasons discussed above, we do not reach the issue of constitutionality raised by the defendant and we find no error in the rulings presented herein for | nreview. The evidence, when viewed in a light favorable to the state, is sufficient to support the defendant’s conviction for distribution of cocaine. Accordingly, the defendant’s conviction is affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before MARVIN, SEXTON, BROWN and WILLIAMS, JJ., and LOWE, J., Pro Tern.
Rehearing denied.